IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT CROSS and JONATHAN
ZAKIN,

                    Plaintiffs,              Case No. 17 C 198

          v.                        Judge Harry D. Leinenweber

LEONARD BATTERSON,

                    Defendant.

MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Defendant's Partial Motion to Dismiss [ECF No. 9] is granted. Counts II through V of the Complaint are dismissed without prejudice.

I. BACKGROUND

This case arises from a contract dispute. In 2005, Plaintiffs Robert Cross and Jonathan Zakin (collectively, the "Plaintiffs") and Defendant Leonard Batterson ("Batterson") executed a contract called the Operating Agreement (the "Operating Agreement"). The Operating Agreement created a Delaware limited liability company, aptly named Batterson Cross and Zakin, LLC ("BCZ"), whose purpose was to "acquire, hold and dispose of Investments" for the benefit of its members. ECF No. 12 (Def.'s Mot. Dismiss), Ex. A (Operating Agreement) ¶ 2.3.

The Operating Agreement laid out the terms for the management and operation of BCZ. It stipulated that a three-member Board of Managers, consisting of Batterson, Cross, and Zakin, was to run the company. *See,* Operating Agreement ¶ 6.1. Any decision requiring the approval of the Board needed the votes of at least two board members. *Id.* Certain decisions, however, required the unanimous consent of all the managers – that is, the approval of Batterson as well as Plaintiffs. *Id.* ¶ 6.1. Decisions calling for such unanimity included "the acquisition or disposition of any Investment of the Company"; "the purchase or sale of interests in Investment Vehicles"; "the offer of any Units and/or the admission of any additional Members"; and "any amendment or modification of this Agreement." *Id.* ¶ 6.1(b)(i)-(x).

With respect to the admission of new members, the Operating Agreement specified that these members may not contribute more than $500,000.00 in total to the company. *See,* Operating Agreement ¶ 3.1. As pleaded in the Complaint, this contract provision ensured that the founding members' ownership in the LLC – and the amount of profits to which they were entitled – never dipped below a certain percentage. *See,* Compl. ¶ 3. In particular, Plaintiffs allege that they were "each entitled to not less than 21.5 percent of the Company's net revenues." *Id.* Plaintiffs further allege that this payout was one of the few ways

in which members of the LLC could be remunerated since "[u]nder the terms of the BCZ Agreement, no member of the Company is permitted to receive any salary or compensation without the express approval of the Board of Managers." *Id.* ¶ 14. Moreover, the Board did not "at any time" approve "any form of salary, compensation, or other distribution to be paid to any of its Members, including Batterson." *Id.* ¶ 15.

Other provisions of the Operating Agreement imposed affirmative obligations on the Board of Managers. In particular, Article X of the Operating Agreement required the Board to keep and make available to its members certain "books, records, [and] accounting." The provision read,

> (a) The Board of Managers shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company's business. The records shall include, but not be limited to, complete and accurate information regarding the state of the business and financial condition of the Company, a copy of the certificate of formation and operating agreement and all amendments to the certificate of formation and operating agreement. . . .

> (b) The books and records shall be maintained in accordance with sound accounting practices and shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours.

Operating Agreement ¶ 10.2.

The facts recounted thus far are largely undisputed. That is, the parties agree that the Operating Agreement was a valid and enforceable contract when it was executed and that, as long as it was in effect, the Operating Agreement regulated the relationship of Plaintiffs and Batterson. Plaintiffs further acknowledge that their claims arose out of this contract, and Batterson admits that the contract created BCZ and governed its operation for a period of time. *See,* Compl. ¶ 2 (alleging that "Plaintiffs' claims arise out of the relationship between Defendant Batterson and Plaintiffs Cross and Zakin that was formed by an Agreement between the parties relating to the formation and operation of an entity known as Batterson Cross Zakin, LLC"); ECF No. 8 (Def.'s Answer) ¶ 2 (admitting that "there was an agreement, dated as of September 23, 2005, between Batterson and Plaintiffs that, among other things, 'related to the . . . operation of an entity known as Batterson Cross Zakin, LLC'"); *id.* ¶ 9 (admitting that "BCZ was at a time governed by . . . [the] Operating Agreement").

At some point, however, the two sides' stories diverge. As is crucial to their lawsuit, Plaintiffs allege that they "[n]ever resigned their respective position as Managing Principals of BCZ." Compl. ¶ 17. Plaintiffs thus maintain that they "remain Managing Principals of BCZ" and that they "[n]ever signed or consented to any amendments to the BCZ Agreement." Compl. ¶¶ 17-18. Batterson

denies these allegations. Def.'s Answer ¶¶ 17–18. Nonetheless, because the allegations are accepted as true at this stage of the litigation, Batterson stands accused of breaching the Operating Agreement for taking actions that were never approved by his fellow managers.

Specifically, Batterson is alleged to have violated the Operating Agreement by engaging in the following conduct. First, he "unilaterally caused the BCZ Agreement to be 'amended' in January 2010," something he did "without permission and without notice to Cross or Zakin, and without authority or consent of the BCZ Board of Managers." Compl. ¶ 23. Second, he changed BCZ's name to Batterson Venture, LLC. *Id.* ¶ 22. Third, he sold "interests in BCZ to third parties in such a manner" that "Cross and Zakin's respective ownership interests in [the putative new company] were [reduced to] only approximately 1 percent each." *Id.* Finally, Batterson used the money raised from the third parties "to pay himself compensation, salary, or other distributions that were not authorized by BCZ's Board of Managers." *Id.* ¶ 24.

Plaintiffs further allege that they did not discover these breaches to the Operating Agreement until late 2015, or about a decade after the contract was executed and five years after the purported amendment to it took place. *See,* Compl. ¶ 21. The impetus for Plaintiffs' discovery was the sale of one of BCZ's

investments to IBM for a handsome sum.  As Plaintiffs state, "BCZ was and is the manager for another entity, BVC-Cleversafe, LLC," which "made direct investment in a company named Cleversafe."  *Id.* ¶ 19.  On "information and belief," Plaintiffs further state that "Cleversafe was acquired by IBM at the end of 2015 or during 2016." *Id.*  Upon the same information and belief, Plaintiffs allege that the transaction generated substantial revenues that should have accrued to them.  *Id.* ¶¶ 19-20 ("Upon information and belief, at least $6 million of the money paid by IBM to BVC-Cleversafe . . . BCZ is entitled [to].  Cross and Zakin are each entitled to not less than 21.25 percent of any management fees paid by BVC-Cleversafe, LLC.").

After learning of the acquisition of Cleversafe by IBM, Cross and Zakin "contacted Batterson to confirm how much money each would be receiving."  Compl. ¶ 21.  This was when Batterson told them the unwelcome news that due to what he had done, Plaintiffs were not entitled to any money (or not as much as they thought).  The information, dismaying as it may have been, came "belatedly" and only after "repeated efforts to obtain additional information from Batterson."  *Id.* ¶ 24.

On the strength of these allegations, Plaintiffs bring a five-count Complaint.  In addition to the breach of contract claim (Count I), Plaintiffs bring four other causes of action that are

the subject of this motion to dismiss. They are: breach of the implied covenant of good faith and fair dealing (Count II), "fraud by/fraudulent concealment" (Count III), unjust enrichment (Count IV), and accounting (Count V).

For the reasons explained herein, the Court grants Batterson's Motion to Dismiss these four counts.

## II. <u>ANALYSIS</u>

As an initial matter, the parties agree that Delaware contract law applies to the present action. The Court thus adopts that choice of law without further comment. The Court also acknowledges that, due to the state residences of the parties and the amount in controversy, it has diversity jurisdiction in this case. *See,* 28 U.S.C. § 1332; Compl. ¶¶ 3-6.

Batterson moves under Rule 12(b)(6) to dismiss all but the breach of contract claim. In ruling on his Motion, the Court freely consults the Operating Agreement, even though that document was only referenced in but not attached to Plaintiffs' Complaint. *See, Grabianski v. Bally Total Fitness Holding Corp.,* 891 F.Supp.2d 1036, 1042-43 (N.D. Ill. 2012) (citing authorities to support the proposition that a court may consider a contract attached to a motion to dismiss in such circumstances as found in this case).

Because Batterson devotes the majority of his briefs to seeking dismissal of Count III, the fraudulent concealment claim, the Court begins its discussion with that claim. It then proceeds in chronological order through the remaining counts.

## A. Count III: Fradulent Concealment

Batterson asserts multiple reasons for dismissal of Plaintiffs' fraud claim. These include the contention that the claim merely duplicates the breach of contract claim, as well as the more common argument that Plaintiffs have failed to plead with particularity the elements of fraud. The Court turns to each of these issues below.

### 1. *Whether Plaintiffs' Fraud Claim is an Impermissible Duplicate of the Contract Claim*

"It seems more and more," said a Delaware court, "that breach of contract claims will not suffice to ameliorate the sense of betrayal parties feel when they come out on the losing end of a contractual business relationship." *Cornell Glasgow, LLC v. LA Grange Props., LLC,* No. N11C-05-016 JRS CCLD, 2012 Del. Super. LEXIS 266, at *2-3 (Super. Ct. June 6, 2012). Balefully aggrieved, these parties "feel compelled to punctuate their breach claims with claims that the breaching party committed fraud." *Id.* Such punctuation, however, is allowed only when the "facts and circumstances reveal that something more than failed performance"

underpins the alleged fraud. *Id.* at *3. Otherwise, the cry of fraud is simply an unwarranted "escalation" of what should be a "straightforward breach of contract dispute," akin to the bringing of "big sticks to a fist fight." *Id.*

As a less colorful statement of Delaware law, when a complaint "alleges fraud contemporaneously with breach of contract, the fraud claim will survive only if premised on conduct that is separate and distinct from the conduct constituting breach." *Hiller & Arban, LLC v. Reserves Mgmt., LLC,* No. N15C-02-161 WCC, 2016 Del. Super. LEXIS 328, at *11-13 (Super. Ct. July 1, 2016); *see also, Air Prods. & Chems. v. Wiesemann,* No. 14-1425-SLR, 2017 U.S. Dist. LEXIS 26819, at *58 (D. Del. Feb. 27, 2017) ("As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.") (quoting *ITW Global Invs. Inc. v. Am. Indus. Partners Capital Fund IV, L.P.,* 2015 Del. Super. LEXIS 320, at *6 (Del. Super. June 24, 2015)) (internal quotation marks omitted). Moreover, a plaintiff cannot "'bootstrap' a breach of contract claim into a tort claim merely by intoning the prima facie elements of the tort while telling the story of the defendant's failure to perform under the contract." *Cornell Glasgow,* 2012 Del. Super. LEXIS 266, at *24.

The Court thus looks to see whether Plaintiffs have carried their burden to plead more than just the story of Batterson's failure to perform under the Operating Agreement. The answer is a plain no. Consider, for example, Plaintiffs' allegation that Batterson "secretly and without authorization caused the BCZ Agreement to be ostensibly amended in 2010." Compl. ¶ 43. This statement is deficient on its face as an allegation of fraud since Batterson's duty to obtain authorization from Cross and Zakin is imposed solely by contract. In other words, the allegation that Batterson wrongfully "caused the BCZ Agreement to be ostensibly amended" is merely a restatement of the allegation that Batterson breached Section 6.1(b)(x) of the Operating Agreement, which required that "any amendment or modification" to the agreement be approved by the entire Board of Managers, Cross and Zakin included. As such, the allegation does nothing to move Plaintiffs' claim from the domain of contract to that of fraud.

The Court reaches the same conclusion with respect to Plaintiffs' other allegations. As with their previous statement, Plaintiffs' allegation that Batterson unilaterally and wrongly removed them as managers is equivalent to their complaint that Batterson breached the Operating Agreement, specifically the provision that a "Managing Principal may be removed by a vote of *all* other Managing Principals". *See,* Compl. ¶ 43 (emphasis

added); Operating Agreement ¶ 6.2(b). Similarly, that Batterson improperly reduced Plaintiffs' ownership shares to "only approximately 1 percent" is a breach of Section 3.1; and that Batterson "paid himself unwarranted, unauthorized, and undisclosed funds, in the form of salaries, compensation, and/or distribution" is a violation of the terms of the agreement under which "no Member of the Company is permitted to receive any salary or compensation." *See,* Compl. ¶¶ 14-15, 45.

In short, Plaintiffs' allegations as to how Batterson perpetrated fraud are coextensive with their allegations that Batterson breached the contract. Such selfsame breach-of-contract pleading cannot support a fraud claim sounding in tort. *See Nemec v. Shrader,* 991 A.2d 1120, 1129 (Del. 2010) (stating in the context of a tort brought alongside a breach of contract claim that "[i]t is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim"); *Data Mgmt. Internationale, Inc. v. Saraga,* No. 05C-05-108, 2007 Del. Super. LEXIS 412, at *9 (Super. Ct. July 25, 2007) ("Under Delaware law, a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort.").

It is true that Plaintiffs also alleged that Batterson committed his offending conduct covertly. That is, they say that he acted "secretly," while "conceal[ing] material facts" from them. *See,* Compl. ¶¶ 43-44. But such allegations do not help Plaintiffs to plead fraud. Simply put, since even "an intentional, knowing, wanton, or malicious" breach of contract is still a breach of contract, such a breach done surreptitiously is not fraud. *See, Data Mgmt.,* 2007 Del. Super. LEXIS 412 at *9 ("Even an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself.").

Plaintiffs' fraud action also fails for the independent reason that they not have pleaded "damages separate and apart from the alleged damages for breach of contract." *AFH Holding Advisory v. Emmaus Life Scis.,* No. N12C-09-045 MMJ CCLD, 2013 Del. Super. LEXIS 180, at *35-36 (Super. Ct. May 15, 2013) ("The party asserting fraud must plead damages separate and apart from the alleged damages for breach of contract. The fraud damages must be more than a 'rehash' of the contract damages."); *Cornell Glasgow,* 2012 Del. Super. LEXIS 266, at *29 (same). This is despite Plaintiffs requesting a slew of damages, including that for their lost "share of the management fees received by or to be received by BCZ as a result of IBM's acquisition of Cleversafe . . . or as

a result of BCZ's direct investment in Cleversafe"; "other incidental, consequential, special, and general damages, plus pre-judgment interest on all such monies"; and, last but not least, punitive damages. Compl. ¶¶ 49-50.

None of these prayers for relief constitutes damages "separate and apart" from those for breach of contract. First, the damages relating to the payoff from BCZ's Cleversafe investment reflect the money allegedly owing to Plaintiffs under the terms of the Operating Agreement. Far from being something "separate and apart" from contractual damages, these lost payments are the classic compensatory damages that would be awarded Plaintiffs if they prevail in their contract action. Second, the requested "incidental, consequential, special, and general damages, plus pre-judgment interest on all such monies" are exactly a "rehash" of the damages that Plaintiffs plead in their contract claim. There, Plaintiffs allege that "[a]s a direct, foreseeable, and proximate result of Batterson's breach of the BCZ Agreement, Plaintiffs suffered damages, including legal costs and fees, plus other incidental, consequential, special and general damages, as well as lost prejudgment interest on all such monies." *See,* Compl. ¶ 36. This is almost verbatim what they plead as damages in this count.

Finally, while Plaintiffs reserve the request for punitive damages to only Count III, the mere request for such relief does not elevate Plaintiffs' claim into fraud. Otherwise, a party could always state fraud simply by asking for those damages which are not available in a contract action. *See, Data Mgmt.,* 2007 Del. Super. LEXIS 412, at *18 ("Punitive damages are not available in a breach of contract case. . . ."). Moreover, the Delaware Supreme Court has instructed that "[t]he award of punitive damages can not be made unless the plaintiff also receives compensatory damages." *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1077 (Del. 1983). Here, Plaintiffs' compensatory damages all "rehash" the breach of contract damages. As such, their prayer for punitive damages standing alone is insupportable and cannot bring about a claim of fraud.

In sum, because Plaintiffs' fraud claim (Count III) is an impermissible bootstrap of the contract claim, the Court dismisses it.

### 2. *Whether Plaintiffs Have Pleaded the Elements of a Fraudulent Concealment Claim*

Any concerns about a duplicate claim aside, Batterson argues – and the Court agrees – that Plaintiffs have failed to plead fraudulent concealment. To state such a claim under Delaware law, Plaintiffs must allege: "1) a false representation, usually one

of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance." *Stephenson,* 462 A.2d at 1074; *accord, Matthews Office Designs, Inc. v. Taub Invs.,* 647 A.2d 382 ¶ 6 (Del. 1994) (calling these elements "well established").

In this case, Plaintiffs do not accuse Batterson of having made any overt false representations. Rather, they argue that Batterson committed fraud either by deliberately concealing material facts or by remaining silent in the face of a duty to speak. *See,* Compl. ¶¶ 42, 44, 46-48; *see also, Stephenson,* 462 A.2d at 1074 ("[F]raud does not consist merely of overt misrepresentations. It may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak."). Batterson counters that Plaintiffs have made only conclusory allegations of any active concealment or duty to speak and so failed the "heightened pleading standards" required under Fed. R. Civ. P. 9(b). *See, United States v. Acacia Mental Health Clinic, LLC,* 836 F.3d 770, 776-77 (7th Cir. 2016) (explaining that Rule 9 "requires heightened pleading standards because of the

stigmatic injury that potentially results from allegations of fraud"). The Court examines Plaintiffs' pleading to see if Batterson is correct.

The Court first searches for factual allegations in the Complaint that reasonably give rise to the inference that Batterson actively concealed information from Plaintiffs. It thus looks for facts suggesting that Batterson took "some action affirmative in nature designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim." *See, Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs. Inc.,* 854 A.2d 121, 150 (Del. Ch. 2004) ("In order to state a claim of fraud by active concealment, [the plaintiff] must show that a defendant took some action affirmative in nature designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim, some artifice to prevent knowledge of the facts or some representation intended to exclude suspicion and prevent inquiry.") (internal quotation marks omitted); *Lecates v. Hertrich Pontiac Buick Co.,* 515 A.2d 163, 176 (Del. Super. Ct. 1986) ("[A] claim of fraudulent concealment requires the twin showing of (a) the defendant's knowledge of the alleged wrong, and (b) an affirmative act of concealment by the defendant. An affirmative act of concealment suggests . . . scienter and some affirmative action on [the defendant's] part in

- 16 -

concealing the wrong.") (internal citations and quotation marks omitted).

The Court finds no such allegations. The closest Plaintiffs come to identifying an affirmative act of concealment is with the allegation that Batterson disclosed the true state of affairs to Plaintiffs "belatedly" and only after they made "repeated efforts to obtain additional information from [him]." Compl. ¶ 24. In their brief, Plaintiffs elaborated on this allegation, stating that Batterson "failed, despite repeated requests, to turn over financial documents, records, receipts, and other documents" to Plaintiffs. ECF No. 16 at 4. Such supplemental pleading is improper, since a "complaint may not be amended by the briefs in opposition to a motion to dismiss," *Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]"), but even if credited, the allegation does not help Plaintiffs.

This is because Plaintiffs have alleged no details as to how Batterson "failed" to honor their requests. Did Batterson simply not respond to Plaintiffs' communications? Did he respond but only "belatedly"? Did he pick up the phone, reply to the email, or greet Plaintiffs at the door only then to put them off with delaying tactics? How is it that Plaintiffs needed Batterson to

"turn over financial documents, records, receipts, and other documents" when, under their own version of the facts, they were members of the Board of Managers and so were charged with keeping such records as well as making them available "at any and all reasonable times during normal business hours"? Operating Agreement ¶ 10.2(b).

Plaintiffs provide no hint of an answer. They choose instead to rely the barebones allegation that Batterson "failed" to produce the information sought. They thus leave the Court with no basis to infer that Batterson did anything other than keeping mum. Plaintiffs therefore have not made out an allegation of active concealment. *See, Air Prods.*, 2017 U.S. Dist. LEXIS 26819, at *58 (D. Del. Feb. 27, 2017) ("Active concealment requires more than mere silence.") (citing *Wiggs v. Summit Midstream Partners, LLC*, 2013 Del. Ch. LEXIS 84, at *11 (Del. Ch. Mar. 28, 2013)).

Next, the Court examines whether Plaintiffs have adequately alleged that Batterson had a duty to speak and breached that duty by remaining silent. It is true that Plaintiffs stated that Batterson owed them a fiduciary duty since he was "a Member and one of the three Managing Principals in BCZ." Compl. ¶ 42. It is also true that as a manager of a LLC, Batterson owes a fiduciary duty to his fellow managers and members, and that the duty encompasses an affirmative obligation to speak in certain

circumstances.  *See, Feeley v. NHAOCG, LLC,* 62 A.3d 649, 660 n.1 (Del. Ch. 2012) (quoting with approval the holding that "in the absence of a contrary provision in the LLC agreement, LLC managers and members owe traditional fiduciary duties of loyalty and care to each other and to the company") (internal quotation marks omitted); *Prairie Capital III, L.P. v. Double E Holding Corp.,* 132 A.3d 35, 52 (Del. Ch. 2015) ("An affirmative obligation to speak [] arises where there is a fiduciary or other similar relation of trust and confidence between the parties.") (internal quotation marks omitted).

However, even accepting that Batterson had some duty to speak, the Court cannot find that he had the duty to say what Plaintiffs contend he should have said.  Plaintiffs charge that Batterson should have told them a number of things.  These include the fact that he amended the Operating Agreement, changed the company's name, reduced their ownership shares, and no longer considered them managers of BCZ.  But as discussed, these are exactly the things that Plaintiffs say Batterson did in breach of the Operating Agreement.  *See, supra,* Section II.A.1.  As such, Plaintiffs' "duty to speak" devolves into the assertion that Batterson should have told them that he was breaching the Operating Agreement.

Under Plaintiffs' interpretation of the law then, a breaching party defrauds the victim if he does not tell the victim of his breach. But as a general rule, people who breach contracts do not tell their counterparties that this is what they are doing. Adopting Plaintiffs' argument would thus turn nearly every breach of contract case into fraud, at least where the alleged victim is owed a fiduciary duty by the defendant. Such a result would cut against the principle established in Delaware law that a fraud claim may not be bootstrapped from facts that tell only "the story of the defendant's failure to perform under the contract." *Cornell Glasgow,* 2012 Del. Super. LEXIS 266, at *24. Since the Court cannot do violence to Delaware law, it hereby rejects the contention that Batterson had a duty to speak and tell Plaintiffs that he was breaching his contractual obligations.

Furthermore, even assuming *arguendo* that Batterson was silent when he should have spoken, the Court cannot find that Plaintiffs justifiably relied on such silence. By Plaintiffs' own account of the facts, Batterson kept silent about the affairs of the joint venture for years. He amended the Operating Agreement in 2010 and told Plaintiffs nothing of the fact (but did not otherwise mislead them) until at least 2015 when the IBM sale went through. Also by Plaintiffs' account, Batterson's silence was maintained against his fellow partners, those who were not just ordinary members of

the LLC but managers tasked with running the firm.  More still, the silence descended over matters that either should have been in the public record, *e.g.,* the change in the name of the LLC, or at least readily available to Plaintiffs as people who had access to the books and records of the LLC (and in fact, were supposed to be the people who kept such books and records).

In the face of such facts, the Court cannot credit Plaintiffs' conclusorily pleaded allegation that they "justifiably relied on Batterson to disclose the truth."  Compl. ¶¶ 44, 46-48. For one, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009).  For another, the Court cannot draw reasonable inferences in Plaintiffs' favor that their reliance was indeed justifiable given the factual content of what they have pleaded. *See, id*. at 663, 678 ("[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.").  No reasonable person in Plaintiffs' position would have stood idly by for years on end and assumed from Batterson's lack of communications that there was nothing worth knowing.

In short, because justifiable reliance is an essential element to pleading fraud and Plaintiffs have not adequately

pleaded it, their claim must fail. *See, Stephenson,* 462 A.2d at 1074; *Great Lakes Chem. Corp. v. Pharmacia Corp.,* 788 A.2d 544, 551 (Del. Ch. 2001) (citing cases to support the position that "justifiable reliance on the alleged misrepresentations and omissions [is] an element essential to maintain the fraud claims"); *Vichi v. Koninklijke Philips Elecs, N.V.,* 85 A.3d 725, 776 (Del. Ch. 2014) ("[I]n Delaware, a plaintiff's reliance must be reasonable, even in cases of intentional deceit.").

Accordingly, Plaintiffs' fraudulent concealment cause of action (Count III) is dismissed both because it is a poorly disguised contract claim and because Plaintiffs have not pleaded the necessary elements of fraud.

### B. Count II: Breach of Implied Covenant of Good Faith and Fair Dealing

Unlike the multi-prong approach he adopted in dealing with Count III, Batterson advances one simple reason why Count II's action for breach of the implied covenant of good faith and fair dealing should be dismissed: the covenant has no applicability where, as here, an express contract controls the conduct complained of.

Batterson is correct. The implied covenant of good faith and fair dealing "is best understood as a way of implying terms in [an] agreement," and it is "employed to analyze unanticipated

developments or to fill gaps in the contract's provisions." *Dunlap v. State Farm Fire & Cas. Co.,* 878 A.2d 434, 441 (Del. 2005) (internal quotation marks omitted). Because the doctrine is intended to "imply[] terms" and "fill gaps," it is always "supersede[d]" by express contractual provisions. *See, Gerber v. Enter. Prods. Holdings, LLC,* 67 A.3d 400, 419 (Del. 2013) (quoting with approval the proposition that "[e]xpress contractual provisions always supersede the implied covenant"), overruled on other grounds by *Winshall v. Viacom Int'l Inc.,* 76 A.3d 808, 815 n. 13 (Del. 2013). "It follows, then, that the implied covenant of good faith and fair dealing does not apply when the contract speaks directly to the alleged gap in the contract the implied covenant has been proffered to fill." *Flores v. Strauss Water, Ltd.,* No. 11141-VCS, 2016 Del. Ch. LEXIS 145, at *30-32 (Ch. Sep. 22, 2016).

In this case, Plaintiffs' cause of action for breach of the implied covenant fails at the earliest threshold: Plaintiffs have identified no gap in the Operating Agreement which the covenant could be used to fill. In pleading this cause of action, Plaintiffs incorporate all the allegations that make up their breach of contract claim but add nothing to support a breach of the implied covenant. Instead, Plaintiffs say, "Batterson has, in bad faith, prevented Cross and Zakin from receiving the benefits

of the BCZ Agreement, among other ways, by failing to provide to Cross and Zakin their required share of the fees resulting from IBM's acquisition of Cleversafe, and by failing to provide Cross and Zakin with their required share of any money received or to be received by BCZ as a result of BCZ's direct investment in Cleversafe." Compl. ¶ 39.

Plaintiffs' pleading thus contains the seeds of its own failure. Any "benefits of the BCZ Agreement" Cross and Zakin are to receive are provided for by that agreement. Any failure on Batterson's part to turn over such money is a breach of the contractual agreement. As such, the express terms of the contract control the situation, and no gap exists for the implied covenant to fill. *See, Stewart v. BF Bolthouse Holdco, LLC,* No. 8119-VCP, 2013 Del. Ch. LEXIS 215, at *57-58 (Ch. Aug. 30, 2013) (dismissing the implied covenant claim when "there was never a 'gap' that the implied covenant could have filled"); *Veloric v. J.G. Wentworth*, *Inc.,* No. 9051-CB, 2014 Del. Ch. LEXIS 178, at *52 (Ch. Sep. 18, 2014) ("The parties to the TRA [contract] considered this issue, as evidenced by the TRA's thorough and detailed Change of Control definition, which covered a wide variety of transactions involving Wentworth and its subsidiaries. The fact that the parties considered this issue . . . demonstrates that there is no 'gap' in this provision of the TRA for the implied covenant of good faith

and fair dealing to fill."); *Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 888 (Del. Ch. 2009) ("To the extent that Kuroda's implied covenant claim is premised on the failure of defendants to pay money due under the contract, the claim must fail because the express terms of the contract will control such a claim.").

Put differently, the implied covenant of good faith and fair dealing finds application when, because a contracting party is exercising a discretionary right, it "must exercise its discretion reasonably." *See, Gerber,* 67 A.3d at 419 ("The implied covenant requires that . . . [w]hen exercising a discretionary right, a party to the contract must exercise its discretion reasonably.") (quoting *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC,* 50 A.3d 434, 440-42 (Del. Ch. 2012)) (emphasis removed); *Amirsaleh v. Bd. of Trade of N.Y., Inc.,* Civil Action No. 2822-CC, 2008 Del. Ch. LEXIS 131, at *29 (Ch. Sep. 11, 2008) (stating that "[t]he implied covenant is particularly important in contracts that endow one party with discretion in performance"). In this case, Batterson has no discretion as to whether he could withhold from Plaintiffs their "required share." Indeed, Plaintiffs have alleged that he simply cannot under the terms of the Operating Agreement. Likewise, Batterson has no discretion as to whether he can remove Plaintiffs as managers, modify the agreement, or reduce their ownership interests without

their consent – the means by which he "prevented [them] from receiving the benefits of the BCZ Agreement." Compl. ¶ 39. In short, because there is no room for discretion, the implied covenant plays no role in determining whether Batterson exercised that discretion reasonably.

For these reasons, the Court dismisses the breach of the implied covenant of good faith and fair dealing claim (Count II).

## C. Count IV: Unjust Enrichment

Given Plaintiffs' early admission that their "claims arise out of the relationship between Defendant Batterson and Plaintiffs Cross and Zakin that was formed by an Agreement," it should not be a surprise that Batterson has seized on the existence of an express agreement to seek dismissal of Plaintiffs' unjust enrichment claim. Compl. ¶ 2. This is because "in evaluating a party's claim for an equitable remedy based on unjust enrichment, courts engage in a threshold inquiry to determine whether a contract already governs the parties' relationship." *Addy v. Piedmonte,* Civil Action No. 3571-VCP, 2009 Del. Ch. LEXIS 38, at *75 (Ch. Mar. 18, 2009). "If a contract exists between the complaining party and the party alleged to have been unjustly enriched that governs the matter in dispute, then the contract remains the measure of the plaintiff's right" and the unjust enrichment claim must fail. *Id.* (internal alteration and quotation

marks omitted); *Tolliver v. Christina Sch. Dist.,* 564 F.Supp.2d 312, 315 (D. Del. 2008) ("[T]he existence of an express, enforceable contract that controls the parties' relationship will defeat an unjust enrichment claim[].") (citing *Bakerman v. Sidney Frank Importing Co., Inc.,* No. Civ. A. 1844-N, 2006 Del. Ch. LEXIS 180, at *18 (Del. Ch. Oct. 10, 2006)).

Plaintiffs urge the Court to spare Count IV on the basis that they are allowed to plead in the alternative. That is, Plaintiffs say they may seek relief under a theory of unjust enrichment as an alternative to relief sought under the contract claim. They are not wrong. *See,* Fed. R. Civ. P. 8(a)(3) (providing that "a demand for the relief sought [] may include relief in the alternative"); *Hiller,* 2016 Del. Super. LEXIS 328, at *6-7 (recognizing that "it is permissible for a party to seek quasi-contractual relief *in the alternative* to its contract claims") (emphasis in original). The problem is that Plaintiffs have not actually pleaded in the alternative.

As a court has explained, pleading in the alternative in this context means that Plaintiffs may claim in Count I that "there was a contract and that it was breached by [the defendant]," and then to claim in Count IV that "there was no valid contract and that [the defendant] was unjustly enriched." *Samuels v. Old Kent Bank,* Case No. 96 C 6667, 1997 U.S. Dist. LEXIS 11485, at *38 (N.D. Ill.

July 31, 1997). Here, however, Plaintiffs incorporated in their unjust enrichment claim the allegations that there is a valid contract. *See,* Compl. ¶ 51 (incorporating by reference all of the allegations set forth in the previous paragraphs, which include the allegations that the Operating Agreement governed the parties' relationship). As such, they have not pleaded an alternative theory. Instead, they (however inadvertently) acknowledge that there is a valid contract but then assert that Batterson was unjustly enriched.

Count IV can be dismissed on this basis alone. At least two different courts in this district have done exactly that. In *Homestead Ins. Co. v. Chi. Transit Auth.,* Judge Nordberg first noted that "[t]he unjust enrichment claim (Count III) adopts by reference all the allegations in the contract claim (Count I) including paragraphs alleging an express contract between the parties." *Homestead Ins.,* No. 96 C 4570, 1997 U.S. Dist. LEXIS 716, at *9 (N.D. Ill. Jan. 16, 1997). He then concluded that because "the unjust enrichment claim alleges an express contract, the unjust enrichment claim must be dismissed." *Id.* (applying Illinois law, which mirrors Delaware law in not countenancing an unjust enrichment action when an express contract controls). Likewise, in *Samuels,* Judge Andersen dismissed the unjust enrichment claim because it "incorporates these paragraphs

[alleging the existence of a contract]." *Samuels,* 1997 U.S. Dist. LEXIS 11485 at *38-39 (further faulting the plaintiffs because "[n]owhere does the Amended Complaint, much less Count IV, allege there was no valid contract. Such a claim first arises in plaintiffs' response to this motion to dismiss. That is too late."). *Cf. Song v. PIL, L.L.C.,* 640 F.Supp.2d 1011, 1016 (N.D. Ill. 2009) ("Song . . . has avoided the problem of incorporating allegations of an express contract in his unjust enrichment and promissory estoppel claims.") (Grady, J.).

More than just sloppy pleading plagues Plaintiffs' claim, however. The pleadings as a whole leave no doubt that the parties' relationship is governed by a contract, regardless of whether Plaintiffs specifically plead that in their unjust enrichment claim. This is problematic, as "alternative pleading allows a party to seek recovery under theories of contract or quasi-contract . . . only when there is doubt surrounding the enforceability or the existence of the contract." *Albert v. Alex. Brown Mgmt. Servs.,* Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133, at *28 (Ch. Aug. 26, 2005). Without such doubt, courts generally dismiss the unjust enrichment action. *Id.* ("Courts generally dismiss claims for *quantum meruit* on the pleadings when it is clear from the face of the complaint that there exists an express contract that controls."). In this case, an enforceable contract

exists whether one adopts Plaintiffs' version of events or Defendant's. Under Plaintiffs' telling of the story, the Operating Agreement controls this dispute; under Batterson's narrative, the 2010 amended version of the Operating Agreement controls. In either case, "it is clear from the face of the complaint [and the answer to the complaint] that there exists an express contract." *Id.*

Accordingly, the Court finds that dismissal of the unjust enrichment claim (Count IV) is proper.

### D. Count V: Accounting

Lastly, Batterson seeks to dismiss Plaintiffs' accounting claim on the basis that an accounting is not "so much a cause of action as it is a form of relief." *Rhodes v. Silkroad Equity, LLC,* No. 2133-VCN, 2007 Del. Ch. LEXIS 96, at *42 (Ch. July 11, 2007). Although such a remedy may be maintained in a suit where other equitable causes of action exist, no equitable ground for relief survives the motion to dismiss in this case. *See, Kirschner v. W. Co.,* 300 F.2d 133, 135 (3d Cir. 1962) ("A prayer for an accounting will not, in itself, render a complaint cognizable in equity. There must be some equitable ground of relief in addition to the mere demand for an account.") (internal citations, alteration and quotation marks omitted). As such, Batterson presses that dismissal of this claim is appropriate.

*See, Garza v. Citigroup Inc.,* 192 F.Supp.3d 508, 511-15 (D. Del. 2016) (crediting the defendant's argument that the plaintiff "fails to state a claim for the relief of an accounting when it has alleged no substantive claim entitling [it] to that remedy").

Plaintiffs did not respond to Batterson's argument for dismissal of Count V. *See, generally,* ECF No. 16 (Pls.' Resp. Br.). The argument is thus waived. *See, Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466-67 (7th Cir. 2010) ("Failure to respond to an argument – as the [plaintiffs] have done here – results in waiver."); *Stevanov v. O'Connor,* Civil Action No. 3820-VCP, 2009 Del. Ch. LEXIS 62, at *48 (Ch. Apr. 21, 2009) ("Because [the plaintiff] did not respond to this argument, she has waived any objection to it."). In the face of plausible case law supporting Batterson's request for dismissal and Plaintiffs' waiver, the Court grants the request. *See, Bonte,* 624 F.3d at 467; *Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

The Court thus dismisses Counts II through V of the complaint.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Batterson's Partial Motion to Dismiss [ECF No. 9] is granted.  Plaintiffs' lawsuit proceeds as a single count complaint for breach of contract.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: June 28, 2017