IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT CROSS and JONATHAN
ZAKIN,

               Plaintiffs,

      v.

  LEONARD A. BATTERSON,

               Defendant.

Case No. 17 C 198

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

This is not the first time the Court has considered the pleadings in this almost four-year-old case. In the original complaint, Plaintiffs, disgruntled partners of Defendant in a Delaware limited liability company, sued Defendant for breach of contract and a host of tort remedies. The Court, in a lengthy opinion written two-and-one-half years ago, dismissed all but the breach of contract count (which Defendant had not included in his motion), holding that, under the facts alleged, the only plausible remedy was breach of contract. *See Cross v. Batterson*, No. 17 C 198, 2017 WL 2798398 (N.D. Ill. June 28, 2017). Now, after years of discovery and a failed attempt at mediation, Plaintiffs amended

their complaint to reallege breach of contract and to add a tort of intentional interference with contractual relations allegation against Defendant.

The amended complaint alleges similar background to the original complaint. In 2005, Robert Cross and Jonathan Zakin, Plaintiffs, and Leonard Batterson, Defendant, entered into a contract, denominated as "Operating Agreement," which created a Delaware Limited Liability Company named "Batterson Cross Zakin, LLC" ("BCZ") for purposes of investing. (Agreement at 14, Mem., Ex. A, Dkt. No. 12-1; Am. Compl. ¶ 9, Dkt. No. 70.) One of the investments, referred to as the "Cleversafe transaction," involved the company's role as manager of an entity named BVC-Cleversafe LLC that made a direct investment in a company named Cleversafe. (Am. Compl. ¶¶ 19–20.) At some time prior to the filing of this lawsuit, Cleversafe was sold to IBM for a substantial sum of money. (*Id.* ¶ 19.)

The breach of contract count (Count I) alleges that Defendant breached the "Operating Agreement" by "diverting and refusing to pay to Cross and Zakin their ownership and financial interests in BCZ and proceeds that Cross and Zakin should have received after the Cleversafe transaction," and Count II alleges that Batterson tortuously interfered with Plaintiffs' contractual relations with BCZ by "prevent[ing] Cross and Zakin from receiving their respective ownership and financial interests in BCZ and proceeds

that Cross and Zakin should have received from the Cleversafe transaction." (*Id.* ¶¶ 31 & 39.) Batterson has once again filed a motion to dismiss but this time has included all counts.

## II. LEGAL STANDARD

Under a Rule 12(b)(6) motion to dismiss, a defendant challenges the legal sufficiency of the complaint. To survive this motion, the company must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). The Court also "draw[s] all reasonable inferences in the light most favorable to the plaintiffs" as the non-moving party. *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1045 (Del. Ch. 2006). If after this evaluation the plaintiffs' pleaded facts do not support the cause of action, the Court will dismiss the complaint. *Id.*

## III. DISCUSSION

According to the amended complaint, compensation of the principals under the Operating Agreement was contingent on either BCZ making money on its own investments, or from third party investors with whom the company did business. (*Id.* ¶ 14.) The

Operating Agreement further provides that BCZ was to be managed by a three-member Board of Managers consisting of the two Plaintiffs and the Defendant. (*Id.* ¶ 10.) The Agreement further required unanimous approval of the three Managers for acquisition or disposition of investments, adding new members, and amending the Operating Agreement. (*Id.* ¶ 11.) The Agreement did not allow any member to withdraw money from BCZ without authority of the Board and there were to be no payments to the managing principals except in the form of "Priority Distribution" as provided for in the Agreement. (*Id.* ¶ 14.) Members who hold Promissory Notes issued by the company are entitled to payments under the terms of the Promissory Notes after priority distributions are paid to the Managing Principals. (*Id.* ¶¶ 36–38.)

Further, according to the amended complaint, Batterson took millions of dollars from BCZ without approval of the Board of Managers, including at least $8.5 million that was received by BCZ from the sale of Cleversafe under the terms of the BVC-Cleversafe Operating Agreement. (*Id.* ¶ 19.) When Plaintiffs requested their share of the Cleversafe proceeds, Defendant told them that they were no longer members of BCZ because the Operating Agreement had been amended without their agreement to eliminate them as members for the purpose of divesting them of their money. (*Id.* ¶¶ 21–23.) Moreover, Plaintiffs alleged they had been issued investment notes by BCZ and Defendant has prevented Plaintiffs from receiving the

interest and principal that was due them under the terms of the notes. (*Id.* ¶ 26.)

## A. Breach of Contract - Count I

Under Delaware Law, which governs here, an LLC Agreement is interpreted to give "the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." DEL. CODE ANN. tit. 6, § 18-1101(b) (West 2013); *Touch of Italy Salumeria & Pasticceria, LLC v. Bascio*, No. 8602-VCG, 2014 WL 108895, at *1 (Del. Ch. Jan. 13, 2014) ("Delaware's law with respect to LLCs, as this Court has repeatedly noted, is explicitly contractarian."). As a result, "[c]lear and unambiguous language . . . should be given its ordinary and usual meaning." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)(citing *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)). As explained by the Delaware Supreme Court, "a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.*

The motion to dismiss Count I is based on Defendant's contention that, according to the terms of the Operating Agreement, the breach alleged is with BCZ and therefore Plaintiffs must look to BCZ for any money claimed to be due. Plaintiffs' first argument against the motion is to point out that Defendant answered the

- 5 -

same claim in the original complaint and so that he cannot now move to dismiss it. In addition, they rely on *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 882-83 (Del. Ch. 2009) for the proposition that explicit liability carve-out provisions do not unambiguously preclude LLC members from all liability, and thus LLC members may sue other members for some alleged breaches of operating agreements.

Defendant, in response, argues that Plaintiffs have cited specific paragraphs from the Operating Agreement that show their complaint is with BCZ rather than him. Batterson further argues that, although that a member may sue another member for breach of an operating agreement, under the facts alleged in the amended complaint there is no basis for liability.

However, Plaintiffs have plainly alleged that Defendant breached the Operating Agreement in a multitude of ways: (1) by having the Operating Agreement amended without their approval to eliminate them as Manager-Members; (2) by withdrawing money from BCZ without their agreement or knowledge; and (3) by admitting new Members without their approval, which then reduced their ownership interests.

In *Kuroda*, the Delaware Chancery Court held that on a motion to dismiss, if a provision alleged to have been violated by a member and that member is not specifically exculpated under another provision of the agreement, a question of fact exists as to whether

a member can be held liable to another member for an alleged breach. 971 A.2d at 883 ("Given the ambiguity in [the relevant provisions], I am unable to conclude that defendants' interpretation—that the managing members cannot, as a matter of law, be liable for breach of the provisions of the LLC Agreement—is the only reasonable interpretation of the LLC Agreement.").

The BCZ Operating Agreement does contain an exculpatory provision in Section 6.7 which limits liability of a managing principal such as Defendant to any member of the LLC for acts performed or failure to perform for acts "within the scope of authority conferred on such Managing Principal" unless such acts or omissions constitute "willful misconduct or gross negligence." (Agreement at 28.) However, the acts complained of by Plaintiffs in Count I are acts arguably not within the scope of authority conferred on Defendant by the Operating Agreement. Under the BCZ Operating Agreement a managing partner may not be removed without his agreement and a Manager may not withdraw money from BCZ without authority of the Board of Managers. (Agreement at 23; Am. Compl. ¶ 11.) Since these acts are arguably outside the protection of the exculpatory provision, they could be determined to be *ultra vires* as well as constitute willful misconduct or gross negligence. The forgoing allegations therefore raise questions of fact as to whether the Defendant breached the Operating Agreement. The motion to dismiss Count I is denied.

### B. The Contractual Interference – Count II

In Count II of the amended complaint, Plaintiffs allege that Defendant tortuously interfered with their contractual relations with BCZ by "prevent[ing] Cross and Zakin from receiving their respective ownership and financial interests in BCZ and the proceeds that Cross and Zakin should have received from the Cleversafe transaction." (Am. Compl. ¶ 39.) In other words, Plaintiffs allege that Batterson's interference caused Cross and Zakin harm by preventing them from receiving funds owned to them by BCZ. Defendant's motion to dismiss this count is based on his contention that, as a matter of law, a party cannot tortuously interfere under his own contract. He cites *Anthony v. Bickley*, 2014 WL 3943687 (Del. Sup. Ct. Aug. 8, 2014), *aff'd.*, 113 A.3d 1080 (Del. 2015) in support. Plaintiffs apparently do not dispute this proposition, because they attempt to differentiate in their brief in opposition between the claim that Defendant's misconduct interfered with their rights under the Operating Agreement and emphasize instead that Defendant's misconduct interfered with the contractual rights they possessed under the Promissory Notes they received from BCZ. So, the argument goes, the rights interfered were contractual-the rights between themselves and BCZ created by the notes issued by BCZ. However, the amended complaint alleges that the promissory notes and their obligations were issued "pursuant to Section 5.5 of the BCZ Agreement," so that Plaintiffs

ultimately look to the Operating Agreement for the rights they claimed were interfered by Defendant. (Am. Compl. ¶ 20.) Therefore, the tort claim is essentially the same claim made in Count I. This is another attempt by Plaintiffs to turn a business contractual dispute into a tort. This attempt fails here for the same reasons that the attempt did in the original complaint. *See Batterson*, 2017 WL 2798398, at *3-5. The motion to dismiss Count II is granted.

## IV. CONCLUSION

For the reasons stated herein, the Motion to Dismiss Count I, Breach of Contract, is denied. The Motion to Dismiss Count II, Tortious Interference with Contract, is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 1/8/2021

- 9 -